UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL GEORGE SMITH,<br><br>    Plaintiff,<br><br>  v.<br><br>THE CITY OF AUBURN, a municipal corporation, and ANDY SUVER,<br><br>    Defendants. | CASE NO. C04-1829RSM<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

This matter is now before the Court for a ruling on defendants' motion for summary judgment on all claims. Plaintiff has asked the Court to defer ruling on the motion until further discovery could be conducted, and defendants have moved for a protective order staying further discovery until the issue of qualified immunity of defendant Suver has been decided. The Court deems it unnecessary to defer a ruling on the motion for summary judgment, or to stay discovery, and both the motion for an extension of time and the motion for a protective order are accordingly DENIED. Dkt. ## 25, 26. As set forth below, defendants' motion for summary judgment (Dkt. # 21) is DENIED.

BACKGROUND

Plaintiff Michael George Smith filed this action pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated when he was arrested with excessive force and bitten by a police dog.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

He also asserts state-law causes of action over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. He names as defendants the City of Auburn and Officer Andy Suver, the handler of the dog.

The relevant facts are not in dispute. In the early morning hours of August 30, 2002, police responded to an alarm at an insurance office in downtown Auburn. Police were informed that a witness reported seeing someone leave the area on foot, heading south on Auburn Way North. Officer Suver arrived at the scene with his police dog, Blitz, and observed that the door had been forced open. Officer Suver checked the scene with Blitz, and then initiated a track of the subject, heading southbound on Auburn Way North. Blitz, on a long leash, led the officer to Veteran's Memorial Park, portions of which are unlit and wooded. Blitz went into such an area, jumped over a shrub and landed on plaintiff, who at that time was homeless and sleeping in the park in a sleeping bag. Blitz bit plaintiff several times on the neck and ear before Officer Suver called him off. Plaintiff was handcuffed and an aid unit was called to evaluate his injuries. Eventually plaintiff was transported to Harborview Medical Center in Seattle, where he underwent surgery to repair the bite wounds.

Plaintiff was subsequently charged with criminal trespass, a misdemeanor. On June 20, 2003, he entered an Alford plea of guilty, maintaining that he was innocent of the charge but acknowledging that the evidence would likely lead to his conviction. At his deposition in this case, he maintained that he was not anywhere near the insurance agency on that night, but rather was in his sleeping bag in the park between midnight and 4 am on the date of the burglary.

Defendants have moved for summary judgment on four separate grounds, contending that:

1) The City of Auburn may not be held liable under § 1983, because any deprivation of plaintiff's constitutional rights did not occur because of a policy or custom of the city;

2) The City of Auburn is entitled to dismissal of plaintiff's strict liability claim, because the State of Washington dog-bite statute does not apply to police dogs;

(3) Officer Suver is protected by qualified immunity; and

(4) Plaintiff has no Fourth Amendment claim under § 1983 for excessive force in an arrest,

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

because he maintains that he was not a criminal suspect but was merely an innocent victim, bitten by mistake.

Plaintiff has opposed the motion on all grounds.[1] Defendants' contentions will be addressed in turn.

ANALYSIS

**I. Defendant's "Innocent Victim" Argument**.

The Court turns first to defendants' assertion that plaintiff cannot assert a constitutional claim because, in maintaining his innocence of the burglary, he is essentially claiming to be an accidental victim of a dog bite. According to defendants, a Fourth Amendment violation requires "an intentional acquisition of physical control." Motion for Summary Judgment, p. 11, citing *Brower v. County of Inyo*, 489 U.S. 593, 593 (1989). Defendants also point to *Andrade v. City of Burlingame*, 847 F. Supp. 760 (N.D. Cal. 1994), in which the district court found that unintended bite victims of an escaped police dog were not seized within the meaning of the Fourth Amendment. That case is totally inapposite. Here, the police dog was acting under direction to find and apprehend a burglary suspect. As a result of that direction, plaintiff was apprehended, arrested, and charged with a crime. The fact that he now maintains that he did not commit the crime is irrelevant to his basis for asserting a Fourth Amendment claim. The Court thus rejects defendants' assertion that plaintiff was not "seized" within the meaning of the Fourth Amendment.

**II. Section 1983 Claims**.

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that (a) the defendant acted under color of state law, and (b) the defendant's conduct deprived plaintiff of a constitutional right. *Balistreri v. Pacifica Police Department,* 901 F. 2d 696, 699 (9th Cir. 1988). In addition, the plaintiff must allege facts showing how each named defendant caused or personally

---

[1] As noted above, plaintiff has requested an extension of time to file a response, following more discovery. However, plaintiff has filed a "provisional memorandum" and affidavits in opposition to the summary judgment motion. The Court finds sufficient grounds for denial of the summary judgment motion in this response.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 3

participated in causing the harm alleged. *Arnold v. IBM,* 637 F. 2d 1350, 1355 (9th Cir. 1981). A suit brought pursuant to § 1983 cannot be based on vicarious liability alone, but must allege that each defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). Nor may a plaintiff hold supervisory personnel liable under 42 U.S.C. § l983 for constitutional deprivations under a theory of respondeat superior. *Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989).

A local governmental unit or municipality can be sued as a "person" under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services,* 436 U.S. 658, 690-91 (1978). The governmental entity "may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior." *Id.* at 694.

**A. Liability of the City of Auburn**.

Plaintiff asserts his claim against the City of Auburn ("City") on the basis that the City has a policy, custom, or practice of utilizing or approving the use of unreasonable force in effecting arrests. His allegations meet the pleading standards set forth in *Monell*. Defendants have moved for summary judgment on the claim of municipal liability on the basis that City of Auburn has clearly stated policies with respect to the use of police dogs, which do not allow the use of unreasonable force in apprehending suspects.

Defendants have provided a copy of the Auburn Police Department's Manual of Standards ("Manual"), relating to the use of police dogs. Paragraph 6 of the Manual states,

> Applying the Dog as a Means of Force
>
> Dogs will be considered another tool for use by professionally trained Auburn police officer dog handlers. Their proper use as a means of force shall be within the parameters guiding the use of any other tool or weapon by the Auburn Police Department as depicted by federal, state, and local statutes and Auburn Police Department policies and procedures. In the absence of written guidelines governing any specific incident, common sense and good judgment must prevail.

Declaration of Richard Jolley, Exhibit F.

Under ¶ 8, "General Requirements, the policy manual states,

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

Announcement—prior to the search of any building or enclosed area, a loud, verbal warning will be made that a building/area will be searched by a police dog and anyone inside must immediately show and identify themselves. This announcement need not be given in circumstances where doing so would endanger the safety of the canine team. The handler will wait one full minute before starting a building search.

*Id.*

Finally, under ¶ 10, "Dog Bite Procedures", the policy manual states,

Whenever an Auburn Police Department dog, while under command, grabs, bites, or in any other way comes into physical contact by mouth with a suspect, it must be a bona fide situation, justified as follows:

a. The dog finds the suspect hiding before his handler sees the suspect and grabs and pulls the suspect from hiding.

b. The suspect refuses to come out of hiding when told to do so and the dog must be sent in to bring the suspect out.

c. The suspect, before submission, is acting in a furtive manner.

d. The suspect is running from the handler and/or dog.

e. To protect himself and/or the handler.

*Id.*

In contrast, a manual produced by the U.S. Department of Justice, titled "Principles for Promoting Police Integrity: Examples of Promising Police Practices and Policies", dated January, 2001, recommends more restrictive limitations on use of police dogs to apprehend suspects. In the "Use of Force" section, under the heading "Use of Canines to Apprehend Suspects", the policy manual states that "[s]pecial precautions are required to ensure that such force is not used unnecessarily or unreasonably." The precautions suggest that a dog be deployed only where (1) the individual is suspected of having committed a serious or violent felony, (2) less potentially injurious techniques are insufficient, and (3) unless it is precluded by safety of the officer, a verbal warning is given, and a supervisor's approval is obtained. *Id.* The manual further suggests that dogs should be trained to "find and bark", rather than "find and bite." Declaration of John Muenster, Exhibit H. The policy of the City of Auburn, set forth above, does not reflect these limitations, in that use of a dog is not limited to serious or violent felony suspects, it does not require the use of potentially less injurious methods than biting, the warning

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

requirement is ambiguous, and nowhere is there a preference for "find and bark" as opposed to "find and bite."

This is not to suggest that the City of Auburn policy on police dog use is necessarily constitutionally deficient. Nor is it necessary for the Court to so find in order for the City to be held liable for plaintiff's injuries.

> Under the *Monell* doctrine, [plaintiff] may recover from the city if his injury was inflicted pursuant to city policy, regulation, custom, or usage. City policy "need only cause the constitutional violation; it need not be unconstitutional per se." City policy "causes" an injury where it is "the moving force" behind the constitutional violation, or where "the city itself is the wrongdoer."

*Watkins v. City of Oakland, California,* 145 F. 3d 1087, 1092 (9th Cir. 1998); *quoting Chew v. Gates,* 27 F. 3d 1432, 1444 (9th Cir. 1994) (internal citations omitted).

As it would be possible for a jury here to find the City policy set forth above was the moving force behind plaintiff's injury, summary judgment on the City's liability under *Monell* must be denied. *Chew*, 27 F. 3d at 1444.

### B. Qualified Immunity.

Defendants assert that Officer Suver is insulated from liability for § 1983 claims by qualified immunity. Qualified immunity protects law enforcement officers who reasonably believe they are acting lawfully in carrying out their duties. *Act Up! Portland v. Bagley,* 988 F. 2d 868, 871 (9th Cir. 1993). The purpose of qualified immunity is to avoid "excessive disruption of government" by allowing the resolution of insubstantial claims on summary judgment. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

An official is entitled to qualified immunity when his conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Id.* "The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988). In considering qualified immunity in a motion for summary judgment, three inquiries are

ORDER ON MOTION FOR SUMMARY JUDGMENT - 6

necessary: (1) the identification of the specific right allegedly violated; (2) the determination of whether that right is so "clearly established" that a reasonable officer would be aware of it; and (3) the ultimate determination of whether a reasonable officer could have believed his conduct was lawful. *Romero v. Kitsap County*, 931 F. 2d 624, 627 (9th Cir. 1991); citing *Tribble v. Gardner,* 860 F.2d 321, 324 (9th Cir. 1988).  The test is an objective one; the Court does not inquire into the actual subjective intent of the officer. *Walnut Properties, Inc., v. City of Whittier,* 861 F. 2d 1102, 1111 (9th Cir. 1988).

In order to decide whether a defendant is entitled to qualified immunity, the Court must first determine whether, "taken in the light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Devereaux v. Abbey,* 263 F. 3d 1070, 1074 (9th Cir. 2001) (en banc); *quoting Saucier,* 533 U.S. 201.  If no constitutional right would be violated even if the allegations were to be established, that is the end of the inquiry.  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*  This inquiry is to be made in light of the specific context of the case, not as a broad general proposition. *Id.*

There is a clear Constitutional prohibition against the use of excessive force in effecting an arrest. *Graham v. Connor,* 490 U.S. 386, 394 (1989).  The issue here is whether the boundaries of that Fourth Amendment right were clearly established in the context of police dog use at the time of plaintiff's arrest in 2002.  As noted above, this inquiry is made in light of the specific facts of the case, not as a broad general proposition. *Saucier,* 533 U.S. at 201.  Plaintiff has alleged that Officer Suver directed Blitz to attack, bite and hold him, despite his plea to stop, in the absence of any articulable reason to believe he was armed or had committed a serious felony, and without any verbal warning that such attack was imminent.

The Ninth Circuit Court of Appeals addressed the state of clearly established law in the context of police dog force in *Mendoza v. Block,* 27 F. 3d 1357 (9th Cir. 1994). In *Mendoza,* sheriff's deputies pursued a bank robbery suspect who fled first by car, and then on foot.  He crawled into some bushes in a residential neighborhood and hid.  The officers, tracing the escape car's license, determined that Mendoza

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

had previously been jailed for another bank robbery. They were also advised that he may be armed. The deputies broadcast warnings to area residents to stay indoors; warnings which Mendoza heard. A helicopter also broadcast announcements to the suspect that he was surrounded and that a dog might be deployed, but Mendoza claimed he did not hear these warnings. He did, however, see the dog approach, and he covered his face with his hand. The dog grabbed Mendoza's arm and dragged him out of the bushes. *Id.* at 1358. Mendoza later filed suit under § 1983, claiming that the deputies used excessive force in arresting him. The trial court held an evidentiary hearing to resolve the disputed facts, and determined that the deputies were entitled to qualified immunity.

On appeal, the Ninth Circuit Court of Appeals, applying the three-step qualified immunity analysis, found at the second step that the law regarding excessive force in the use of police dogs was clearly established. *Id.* at 1362. Following a review of the array of existing case law on the subject, the court stated,

> This does not mean, however, that there was no clearly established law that would indicate to the deputies that a constitutional right might be violated when using a dog during an arrest. Mendoza argues that the use of a police dog in this case constituted excessive force. Officers have a considerable amount of guidance from the courts in the permissible use of force while making an arrest. It is clearly established that "[t]he use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." This analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a "weapon" might become unlawful. For example, no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control. An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury.
>
> We therefore hold that the deputies' use of the police dog is subject to excessive force analysis, and that this law is clearly established for purposes of determining whether the officers have qualified immunity.

*Id.* at 1361-62 (citations omitted). Having found the law clearly established, the appellate court proceeded to the third step of the qualified immunity analysis, and affirmed the district court's determination that the officers' conduct was objectively reasonable. *Id.*

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8

Several years later, in affirming a district court's denial of qualified immunity to an officer, a different panel, citing to *Mendoza,* agreed that it was "clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force" so as to establish a constitutional violation. *Watkins,* 145 F. 3d at 1094.  In *Watkins*, the officer responded to an alarm at a warehouse, established a perimeter, and announced that a dog would be released.  The dog located the suspect, bit and held him.  The officer did not order the dog off until the suspect complied with an order to show his hands.  *Id.* at 1090.  As noted, qualified immunity was denied.

These cases demonstrate that the law surrounding excessive force in the use of police dogs was clearly established at the time of plaintiff's arrest.  The Court thus turns to the third step in the qualified immunity analysis:  the ultimate determination of whether a reasonable officer in this situation could have believed his conduct was lawful.  *Romero,* 931 F. 2d at 627.  Because there are unresolved factual issues surrounding the use of the dog, such as the timing, force and duration of the bite, whether warnings were given, and whether less forceful alternatives were available, this context-specific reasonableness becomes a question for the jury.

The courts have struggled with the qualified immunity analysis on the summary judgment,  when there are issues of fact relevant to the analysis. *See, Sloman v. Tadlock,* 21 F. 3d 1462, 1467-69 (9th Cir. 1994).  While the question of clearly established law is for the Court, it is the jury that is "best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place." *Id.* at 1468.  The existence of a factual dispute is, of itself, not a sufficient basis to deny summary judgment on a qualified immunity claim. *Saucier,*  533 U.S. at 200.  However, once the Court has concluded that plaintiff's facts would establish a constitutional violation if proven true, and that the right violated is clearly established, the objective reasonableness of the officer's conduct must be determined in light of the facts of the case.  Those facts are yet to be determined by the jury, and the final step of the qualified immunity analysis must await that determination.  Accordingly, the motion for summary judgment on qualified immunity must be denied.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 9

**III. State Law Claims**.

Defendants have also moved for summary judgment on plaintiff's state law claims of assault and battery, and violation of statute. The Washington strict liability dog-bite statue provides that

> The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

R.C.W. 16.08.040. Plaintiff has asserted a claim under this statute against the City, as owner of the dog.

In moving for summary judgment, defendants contend that this strict liability statute does not apply here because it was unlawful for plaintiff to sleep in the park after closing hours. However, there is no requirement in the statute that the person bitten be "lawfully" present when he is in a public place, and the Court declines to read such a requirement into the statute.

Defendants also assert that the statute does not apply to police dogs, and that "there is not a single case on record in the State of Washington where an action under the statute has been sustained in the police dog context." Motion for Summary Judgment, p. 9. Plaintiff in response has demonstrated that in two recent federal cases, one in this district and one in the Eastern District of Washington, the Court concluded that R.C.W. 16.08. 040 does apply to police dogs. *Hapke v. City of Edmonds, et a.,* C05-0046TSZ; *Rogers v. City of Kennewick, et al.,* C04-5028-EFS. Defendants argue that these are unreported cases with no persuasive authority, and this Court should not follow them. However, this Court has independently reached the conclusion that the plain language of the statue provides no exception for police dogs. Had the Legislature meant to except police dogs from the reach of the statute, it could have done so. Moreover, the conclusion that police dogs are covered under this statute is consistent with a separate statute which provides immunity from suit under state law to the handler, but not the owner, of a police dog. R.C.W. 4.24.410(2). Thus, the court finds that the strict liability statute does impose liability on the City, as owner of a police dog.[2] Accordingly, defendants' motion for

---

[2] Defendants have asserted, in an unsigned declaration, that "Defendants for the City of Auburn [sic] have moved for discretionary review of the order in *Ken and Mary Lou Rogers v. City of Kennewick*, U.S.D.C. Cause No. 04-5028, regarding whether RCW § 16.08.040 applies to police dogs."

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 10

summary judgment on this issue is denied.

Finally, defendants argue for dismissal of the tort claim of assault and battery on the basis that (1) plaintiff's contention that he is merely an innocent victim negates the intent requirement of the tort, because Officer Suver's intent in releasing the dog was to apprehend a burglary suspect, not an innocent victim; and (2) the state law claim is merged into the § 1983 claim, from which Officer Suver is protected by qualified immunity. Both lines of argument have been rejected above. Summary judgment is accordingly denied on the claim of assault and battery.

CONCLUSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, it any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Crop. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). However, no defense to an insufficient showing is required. *Neely v. St. Paul Fire and Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir. 1978).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. Id. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

Declaration of Brock Gavery, Dkt. # 35. The Court finds no basis to alter its conclusion based on the filing of a motion. Should the Order of the District Court be reversed, this Court shall upon motion of defendants re-visit the issue.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 11

The Court has applied these standards and has viewed all evidence in the light most favorable to plaintiff. For the reasons stated, defendants' motion for summary judgment is DENIED on all claims.

DATED this 19th day of May, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY JUDGMENT - 12